**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Goulding*, **Slip Opinion No. 2020-Ohio-4588.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4588

DISCIPLINARY COUNSEL *v*. GOULDING.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Goulding*, Slip Opinion No. 2020-Ohio-4588.]**

*Judges—Misconduct—Violations of the Code of Judicial Conduct—Conditionally stayed six-month suspension.*

(No. 2020-0738—Submitted July 22, 2020—Decided September 29, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-007.

_____

**Per Curiam.**

{¶ 1} Respondent, Judge Michael Robert Goulding, of Toledo, Ohio, Attorney Registration No. 0066071, was admitted to the practice of law in Ohio in 1996. He has been a judge of the Lucas County Court of Common Pleas, General Division, since August 26, 2013.

{¶ 2} In a February 18, 2020 complaint, relator, disciplinary counsel, alleged that Goulding engaged in judicial misconduct by interfering in a case assigned to another judge involving the incarcerated boyfriend of the daughter of Goulding's friends, engaging in ex parte communications with the boyfriend, and orchestrating the boyfriend's release on a recognizance bond two days before his scheduled arraignment.

{¶ 3} Based on the parties' stipulations and the evidence presented at a hearing before a panel of the Board of Professional Conduct, the board found that Goulding committed the charged misconduct and recommends that he be suspended from the practice of law for six months with the entire suspension stayed on conditions.

{¶ 4} We adopt the board's findings of misconduct and recommended sanction.

## Facts and Misconduct

{¶ 5} On February 8, 2019, a Lucas County grand jury indicted C.G. on three second-degree felony counts of illegal use of a minor in a nudity-oriented performance. On Friday, February 15, C.G. was arrested and held without bail in the Lucas County Jail.

{¶ 6} On Sunday, February 17, longtime friends of Goulding summoned him to their home to assist them with an emergency. Upon his arrival, the friends informed Goulding that their daughter had locked herself in her room following C.G.'s arrest. Interpreting their request for assistance to be "a quest for information" regarding C.G.'s status and current whereabouts, Goulding used his cell phone to call the Lucas County Pretrial Services Department. Although it is not clear whether Goulding identified himself by name or title, his phone number was in the department's Caller ID system. Goulding therefore stipulated that the officer who answered his call knew his identity as a common pleas court judge. After confirming that C.G. remained in custody, Goulding asked the officer about

the pending charges. The officer informed him that C.G. had been charged with several felony counts of illegal use of a minor in a nudity-oriented performance.

{¶ 7} Rather than end the call after he obtained the information his friends were seeking, Goulding asked the officer whether the department had prepared a public-safety assessment (a tool designed to assess a defendant's flight risk and likelihood of engaging in criminal activity while charges are pending). The officer confirmed that an assessment had been prepared and stated that the recommendation was to release C.G. on a recognizance bond and prohibit him from having contact with the alleged victim. In addition, the officer informed Goulding that C.G. was on probation for an aggravated-menacing conviction in the Maumee Municipal Court but that due to an issue with that court's website, he could not obtain any other information about that offense.

{¶ 8} The officer informed Goulding that C.G.'s case was assigned to Judge Joseph McNamara, another judge of the Lucas County Court of Common Pleas, General Division, and was scheduled for arraignment on Tuesday, February 19. Nevertheless, Goulding ordered a recognizance bond with a no-contact order, allowing for C.G.'s immediate release.

{¶ 9} At some point during the evening, Goulding learned the identity of an attorney who might be representing C.G. in the pending case.

{¶ 10} Meanwhile, the daughter of Goulding's friends had been speaking with C.G. on her cell phone. Upon learning that Goulding had orchestrated C.G.'s release, the daughter handed the phone to Goulding, who spoke directly with C.G. and informed him that he would be released in about an hour. He instructed C.G. to "sit tight" until his parents arrived, and he told C.G. that he would have to appear before Judge McNamara on February 19. C.G. replied, "Thank you," to which Goulding responded, "Do you have any questions?" C.G. stated that he did not and once again thanked Goulding.

{¶ 11} After handing the phone back to his friends' daughter, Goulding sent a text message to the attorney who was thought to be representing C.G., advising him that Goulding had set a recognizance bond with a no-contact order. Later that evening, the attorney responded to confirm his representation and thank Goulding for his assistance.

{¶ 12} After C.G. discussed his anticipated release with his father, C.G. called the daughter of Goulding's friends. Meanwhile, Goulding's friends informed Goulding that the alleged victim of C.G.'s offenses (who was significantly younger than C.G.) had sent nude photographs of herself to C.G. and that C.G. had been expelled from two schools for drug-related behavior. Goulding began to have second thoughts about setting the bond and permitting C.G. to be released before his scheduled arraignment.

{¶ 13} Unable to obtain additional information about C.G.'s aggravated-menacing conviction from the Maumee Municipal Court's website on his smartphone, Goulding took the phone from his friends' daughter and spoke with C.G. a second time. He began the conversation by asking C.G. whether his aggravated-menacing conviction involved the same victim, and C.G. assured him that it did not. Goulding then asked C.G. a series of questions about the facts underlying the charges pending against him.

{¶ 14} Later that evening, the Lucas County Jail released C.G. on a recognizance bond pursuant to Goulding's order. Without Goulding's involvement, C.G. would have been held without bail until his arraignment scheduled for two days later.

{¶ 15} On the day of C.G.'s scheduled arraignment, Goulding left a voicemail message for Judge McNamara, informing him that he had set bond in C.G.'s case, and Judge McNamara left that bond intact. However, Goulding did not inform C.G.'s counsel that he had engaged in ex parte communications with C.G. and that he may have learned information that was material to the case. Nor

4

did he inform the prosecutor's office that he had engaged in ex parte communications with C.G. and his counsel, that he had set the bond in C.G.'s case, or that C.G. had been released from jail.

{¶ 16} While preparing discovery in C.G.'s case, a Lucas County assistant prosecutor listened to C.G.'s jail calls and recognized Goulding's voice. The assistant prosecutor informed his supervisor of Goulding's communications with C.G. and notified Goulding that he would be listed as a state's witness in the case. Goulding contacted his personal counsel and then self-reported his misconduct to relator on April 15, 2019. He later waived his right to an independent determination of probable cause by the board.

{¶ 17} In May 2019, C.G. pleaded guilty to four first-degree misdemeanors—disseminating matter harmful to juveniles, criminal mischief, telecommunications harassment, and theft. In exchange for his pleas, the state dismissed the three second-degree felony counts of illegal use of a minor in a nudity-oriented performance. The parties have stipulated that Goulding's communication with C.G. did not impact the final disposition of the case.

{¶ 18} The parties stipulated and the board found that Goulding's conduct violated Jud.Cond.R. 1.2 (requiring a judge at all times to act in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety and the appearance of impropriety) and 2.9(A) (generally prohibiting a judge from initiating, receiving, permitting, or considering ex parte communications). Although the parties agreed to dismiss an alleged violation of Jud.Cond.R. 1.3 (prohibiting a judge from abusing the prestige of judicial office to advance the personal or economic interests of the judge or others), the board found that without Goulding's personal intervention on behalf of his friends, C.G. would not have been released from jail two days before his scheduled arraignment. Accordingly, the board found that Goulding's conduct

represented an obvious abuse of his judicial office that falls squarely within the conduct prohibited by the rule.

{¶ 19} We adopt the board's findings that Goulding's conduct violates Jud.Cond.R. 1.2, 1.3, and 2.9(A).

## Stipulated Sanction

{¶ 20} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 21} Contrary to the parties' stipulation to a lack of aggravating factors, the board found that at least two aggravating factors are present. First, Goulding committed multiple rule violations. *See* Gov.Bar R. V(13)(B)(4). In addition to finding that Goulding committed all three of the charged rule violations, the board noted that his conduct also appears to violate Jud.Cond.R. 2.9(C) (prohibiting a judge from independently investigating facts in a matter) and 2.4(B) (prohibiting a judge from permitting family, social, political, financial, or other interests or relationships to influence judicial conduct or judgment).

{¶ 22} The second aggravating factor found by the board was that Goulding exhibited an attitude of denial. *See* Gov.Bar R. V(13)(B)(7). Even after admitting that his conduct was wrong and that it violates two judicial-conduct rules, he downplayed his offenses and failed to offer any plausible explanations for his misconduct. Although he knew that he would be violating the rule prohibiting ex parte communication by talking to C.G., he testified that he went ahead and engaged in the first conversation with C.G. because it was "simply ministerial" and the violation would be "de minimis and inconsequential." He claimed that he engaged in the second ex parte communication with C.G. only because the additional information provided by his friends had raised concerns that his decision to set the recognizance bond may have been ill-advised. At his

6

disciplinary hearing, Goulding maintained that he did not initiate either of the ex parte communications with C.G.—even though he had stipulated that he "took the phone" from his friends' daughter to ask C.G. about his aggravated-menacing conviction and then proceeded to question C.G. about the charges pending against him.

{¶ 23} When asked why he went above and beyond obtaining and transmitting the publicly available information about C.G.'s status as requested by his friends, Goulding stated that he "guess[ed]" he had acted out of "habit" when he took it upon himself to interfere in another judge's case by setting bail and securing the defendant's release from jail before his scheduled arraignment. He insisted that C.G.'s release benefitted the jail by making a bed available—though he presented no evidence that the jail was overcrowded at that particular time. And although Goulding self-reported his conduct to relator, the board found that he would not have made that report if the assistant prosecutor had not informed Goulding that he had discovered the recorded ex parte communications and identified Goulding as a potential witness in C.G.'s case. On these facts, the board was not convinced that Goulding appreciated the gravity and inappropriateness of his conduct.

{¶ 24} As for mitigating factors, the board adopted the parties' stipulations that Goulding had no prior discipline, had demonstrated a cooperative attitude toward the disciplinary proceedings, and had presented more than 20 letters attesting to his good character and positive reputation in his community. *See* Gov.Bar R. V(13)(C)(1), (4), and (5). Unable to discern the motive for Goulding's actions, the board declined to adopt the parties' stipulation that he had acted without a dishonest or selfish motive.

{¶ 25} The parties jointly recommend that Goulding be publicly reprimanded for his misconduct. The board considered six cases cited by the parties in support of that sanction and several others in which we imposed six-

month suspensions—with or without conditional stays—on members of the judiciary who had engaged in similar misconduct.

{¶ 26} The board suggested that Goulding's misconduct is perhaps most closely aligned with that in *Disciplinary Counsel v. Stuard*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788—a case in which we publicly reprimanded a judge who had engaged in ex parte communications with an assistant prosecutor whom he had asked to prepare a sentencing opinion in a death-penalty case. Although Stuard had violated two canons of the former Code of Judicial Conduct comparable to Goulding's violations of Jud.Cond.R. 1.2 and 2.9(A) and had presented the same mitigating factors that Goulding has established here, there were no aggravating factors present in Stuard's case. Citing the three aggravating factors present here, the board believes that Goulding's conduct warrants a sanction more severe than a public reprimand.

{¶ 27} On the other hand, the board found that the two cases in which we imposed on judges six-month suspensions with no stay are distinguishable from this case. One of those judges had engaged in dishonest conduct by issuing a judgment entry falsely stating that the prosecutor had dismissed a speeding case against the judge's personal attorney and then engaged in ex parte communications in an effort to conceal his actions. *See Disciplinary Counsel v. Hale*, 141 Ohio St.3d 518, 2014-Ohio-5053, 26 N.E.3d 785. The other judge, who had repeatedly and inappropriately injected himself into his daughter's speeding case and made disparaging remarks about the law-enforcement officer involved in the case, had a prior disciplinary offense. *See Disciplinary Counsel v. Marshall*, 156 Ohio St.3d 263, 2019-Ohio-670, 125 N.E.3d 856.

{¶ 28} After considering those cases, the board found that the appropriate sanction for Goulding's misconduct falls somewhere between a public reprimand and a six-month suspension. It therefore recommends that we impose a six-month suspension but stay the entire suspension on the conditions that Goulding

8

complete two hours of continuing legal education ("CLE") in the area of judicial ethics within six months of this court's final disciplinary order and engage in no further misconduct. In support of that sanction, the board cited *Disciplinary Counsel v. Hoague*, 88 Ohio St.3d 321, 725 N.E.2d 1108 (2000) (imposing a conditionally stayed six-month suspension on a judge who misused the authority of his judicial office to reprimand the owner and the driver of a vehicle that he had personally observed being operated in a reckless manner), and *Disciplinary Counsel v. Porzio*, __ Ohio St.3d __, 2020-Ohio-1569, __ N.E.3d __ (imposing a conditionally stayed six-month suspension on a magistrate who, after conducting a hearing on petitions for civil stalking protection orders, excused one of the pro se parties and then engaged in a lengthy ex parte communication with the remaining party regarding the merits of the pending petitions).

{¶ 29} After independently reviewing the record and relevant precedent, we agree that a six-month suspension, stayed in its entirety on the conditions recommended by the board, is the appropriate sanction in this case.

**Conclusion**

{¶ 30} Accordingly, Michael Robert Goulding is suspended from the practice of law for six months, with the entire suspension stayed on the conditions that (1) within six months of the final order in this case, he complete two hours of CLE in the area of judicial ethics in addition to the requirements of Gov.Jud.R. IV and (2) engage in no further misconduct. If Goulding fails to comply with either condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to Goulding.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., concurs in part and dissents in part, with an opinion.

FISCHER, J., not participating.

_____

**DONNELLY, J., concurring in part and dissenting in part.**

{¶ 31} In this case, the parties agreed that respondent Judge Michael Goulding's misconduct warrants a public reprimand. I see nothing in the record that suggests that we should impose a sanction different from the one that was jointly recommended. I concur in the bulk of the majority opinion but would impose a public reprimand.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle R. Bowman, Assistant Disciplinary Counsel, for relator.

Montgomery Jonson, L.L.P., and George D. Jonson, for respondent.

_____