**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Villarreal*, Slip Opinion No. 2024-Ohio-5165.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5165

COLUMBUS BAR ASSOCIATION *v*. VILLARREAL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Villarreal*, Slip Opinion No. 2024-Ohio-5165.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Eighteen-month suspension, fully stayed on conditions.*

(No. 2024-0492—Submitted July 10, 2024—Decided October 30, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-031.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, STEVENSON, and DETERS, JJ. SCOT ALLAN STEVENSON, J., of the Ninth District Court of Appeals, sat for BRUNNER, J.

**Per Curiam.**

{¶ 1} Respondent, Teresa Ann Villarreal, of Columbus, Ohio, Attorney Registration No. 0042586, was admitted to the practice of law in Ohio in 1989.

{¶ 2} In an October 11, 2023 complaint, relator, the Columbus Bar Association, charged Villarreal with professional misconduct arising from her defense of frivolous mechanic's liens, for which she was sanctioned under Civ.R. 11, and from her lack of diligence and communication in representing a client in a domestic-relations matter. The parties entered into stipulations of fact and misconduct.

{¶ 3} A three-member panel of the Board of Professional Conduct found that Villarreal had committed professional misconduct and recommended that we suspend her for one year with six months stayed on the condition that she commits no further misconduct. The panel further recommended that Villarreal's reinstatement be conditioned on her completion of six hours of continuing legal education ("CLE") focused on law-office management, in addition to the requirements of Gov.Bar R. X, and that after reinstatement, she be required to work with a monitoring attorney for one year with a focus on law-office management and client communications. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 4} Villarreal objects to the board's recommended sanction, asserting that the board failed to correctly weigh the mitigation she presented with respect to the presumption of actual suspension that applies when an attorney violates Prof.Cond.R. 8.4(c), *see Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, syllabus. She contends that her misconduct warrants a fully stayed suspension. Relator agrees, arguing that the board improperly weighed the mitigation evidence and misapplied our precedent in this case.

{¶ 5} After a review of the record and our caselaw, we adopt the board's findings of fact and misconduct. However, we reject its recommended sanction

and conclude that the appropriate sanction for Villarreal's misconduct is an 18-month suspension fully stayed on conditions.

## I. MISCONDUCT

### A. Count 1—The Almasoodi Matter

{¶ 6} In 2020, J. Harris Construction, Inc., was hired as a subcontractor by Siravo Construction, L.L.C., to construct a driveway for the Almasoodi family. After the work was completed, the Almasoodi family paid Siravo, but J. Harris Construction did not receive payment. Subsequently, John Harris, owner of J. Harris Construction, met with Villarreal and asked her to draft a letter to Siravo demanding payment. Based solely on information that Harris provided, Villarreal drafted the letter, and Harris sent it. The demand letter was unsuccessful, and at Harris's request, Villarreal prepared a mechanic's lien for Harris to file. Harris first attempted to file the mechanic's lien without including the proper fees, so the recorder's office rejected it. Harris then successfully filed the lien after the statutory deadline had passed. Villarreal knew that the filing was untimely.

{¶ 7} The Almasoodi family's attorney, Jeffrey Lewis, provided Villarreal with proof that the Almasoodis had paid Siravo for the driveway work and demanded the release of the lien. Villarreal responded that Harris understood that he must release the lien. However, Harris did not release it.

{¶ 8} The Almasoodi family sued J. Harris Construction for a declaratory judgment invalidating the lien and for fraud, for slander of title, and to quiet title, and they sought injunctive relief requiring Harris to file a release of the lien. Villarreal filed an answer, counterclaims, and cross-claims on behalf of Harris. Lewis moved to dismiss Harris's counterclaims and for sanctions against Harris and Villarreal.

{¶ 9} The trial court granted Lewis's motion to dismiss and ordered Harris to release the lien. After a hearing, the court determined that Harris and Villarreal had engaged in frivolous conduct and held them in contempt for failing to comply

with its order by not timely releasing the mechanic's lien. In the meantime, Villarreal filed a motion for relief from judgment; Lewis moved for sanctions and attorney fees in response to that motion. The court denied Harris's motion for relief from judgment and scheduled a hearing on Lewis's motion for sanctions.

{¶ 10} On November 12, 2021, the trial court found that the motion for relief from judgment that Villarreal had filed was frivolous. The court also concluded that Harris had made false and misleading statements in the affidavit attached to the motion for relief from judgment and that Villarreal knew the affidavit contained false statements. The court ordered Harris and Villarreal to pay the Almasoodi family's attorney fees and expenses in amounts of $22,511.22 and $5,731.02. However, at her disciplinary hearing, Villarreal testified, and the board found, that she had paid $48,000 in sanctions in total. Villarreal did not seek contribution from Harris.

{¶ 11} The parties stipulated and the board found that Villarreal's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), 3.1 (prohibiting a lawyer from bringing or defending a proceeding that is unsupported by law or lacks a good-faith argument for an extension, modification, or reversal of existing law), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 3.3(a)(3) (prohibiting a lawyer from knowingly offering evidence the lawyer knows to be false), 3.4(d) (prohibiting a lawyer from intentionally or habitually making a frivolous motion or discovery request or failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party), 4.1(a) (prohibiting a lawyer, while representing a client, from knowingly making a false statement of material fact or law to a third person), and 8.4(c) (prohibiting a lawyer

4

from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt these findings of misconduct.

### B. Count 2—The K. Hovnanian Homes Matter

**{¶ 12}** K. Hovnanian Homes contracted with Zachary and Nicole McMichaels to construct a residential building, and it subcontracted with J. Harris Construction to do work on the project. K. Hovnanian Homes did not pay for this work, and Harris executed and filed a mechanic's lien on the McMichaels' property. Subsequently, K. Hovnanian Homes filed an application for discharge of the mechanic's lien in lieu of bond with the Fairfield County Court of Common Pleas. The court scheduled a hearing that Villarreal attended, at which the lien on the property was released. Despite knowing that there was no longer a lien on the property, Villarreal sued the McMichaels on behalf of Harris seeking damages and foreclosure of the lien.

**{¶ 13}** The McMichaels moved to dismiss the complaint and sought sanctions and attorney fees. The common pleas court found that Villarreal had willfully violated Civ.R. 11 and engaged in frivolous conduct in filing the complaint, and it awarded sanctions and attorney fees. The sanctions award was paid by Harris's bonding company.

**{¶ 14}** The parties stipulated and the board found that Villarreal's conduct violated Prof.Cond.R. 1.1, 3.1, and 3.4(d). We adopt these findings of misconduct.

### C. Count 3—The Northern Place, L.L.C., Matter

**{¶ 15}** Mid-Ohio Contracting Services, L.L.C. ("Mid-Ohio") subcontracted with J. Harris Construction to provide demolition and various other services on Northern Place, L.L.C.'s property. After receiving partial payment from Mid-Ohio, Harris filed a mechanic's lien against the property. Northern Place then sued J. Harris Construction to have the lien released. Villarreal represented Harris in the litigation. Northern Place moved for default judgment, and Villarreal did not file a response. Instead, Villarreal filed an answer and counterclaim, and she filed a

cross-claim against Mid-Ohio. Harris's filings were untimely and made out of rule and without leave of court. The trial court granted Northern Place's motion for default judgment. Villarreal then moved the court for relief from judgment, but she failed to appear at the hearing on the motion.

{¶ 16} The parties stipulated and the board found that Villarreal's conduct violated Prof.Cond.R. 1.1, 3.1, and 3.4(d). We adopt these findings of misconduct.

*D. Count 4—The Contreras Matter*

{¶ 17} Villarreal represented Madelyn Contreras in a custody and child-support matter from 2018 to 2021. Villarreal communicated with Contreras through an assistant because Contreras spoke primarily Spanish. In July 2020, Contreras entered into a shared-parenting plan with the father of her child that required each parent to give the other parent notice of any change of address. Villarreal considered her representation of Contreras to be complete and advised Contreras to keep the court informed of any change of address.

{¶ 18} A couple of months later, Contreras moved from Columbus to Springfield but did not file a change of address with the court. And although the parties had agreed to the shared-parenting plan in July 2020, the court did not approve and file it until December 9, 2020. Contreras did not receive a copy of the final entry.

{¶ 19} In a series of text messages between January and March 2021, Contreras communicated with Villarreal and her assistant about notifying the court of her address change. Villarreal's assistant falsely told Contreras that the new address had been sent to the court, and Villarreal failed to follow up with Contreras. Subsequently, the father of Contreras's child filed a contempt motion against Contreras on the grounds that she had failed to notify the court of her new address. The court entered an agreed judgment entry dismissing the contempt motion in exchange for Contreras waiving a $2,000 arrearage in child support.

**{¶ 20}** The parties stipulated and the board found that Villarreal's conduct violated Prof.Cond.R. 1.3, 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), and 5.3(b) (requiring a lawyer to make reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer). We adopt these findings of misconduct.

## II. SANCTION

**{¶ 21}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 22}** The board found that three aggravating factors are present in this case: Villarreal acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(2) through (4). As for mitigating factors, the board found that Villarreal had a clean disciplinary record, made a timely and good faith effort to make restitution, and made full and free disclosure to the board. *See* Gov.Bar R. V(13)(C)(1), (3), and (4).

**{¶ 23}** The board recommends that we suspend Villarreal for one year, with six months stayed on the condition that she commits no further misconduct, and that her reinstatement be conditioned on her completion of six hours of CLE focused on law-office management, in addition to the requirements of Gov.Bar R. X. It also recommends that Villarreal be required after reinstatement to work with a monitoring attorney for one year, with monitoring to focus on law-office management and client communications.

**{¶ 24}** We have held that "[w]hen an attorney engages in a course of conduct that violates [an ethical rule prohibiting dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law

7

for an appropriate period of time." *Fowerbaugh*, 1995-Ohio-261, at syllabus. In *Fowerbaugh*, we imposed a six-month suspension on an attorney who lied to a client about the status of her case, created a false document to convince the client that he had filed her case after the court rejected his filing, and perpetuated his dishonesty by telling the client that a hearing had been scheduled and later that it had been canceled. *Id.* at ¶ 3-7, 18.

**{¶ 25}** As we recently explained in *Mahoning Cty. Bar Assn. v. Macala*, 2024-Ohio-3158, "[w]e have tempered the presumptive sanction of an actual suspension for an attorney's dishonest conduct in two sets of circumstances. First, we have done so when an attorney has engaged in an isolated incident of dishonest conduct." *Id*. at ¶ 24. "Second, we have recognized that 'an abundance of mitigating evidence can justify a lesser sanction.' " *Id.* at ¶ 25, quoting *Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶ 8.

**{¶ 26}** In determining the proper sanction for Villarreal's misconduct, the board compared the facts of this case to five other cases, but it relied primarily on *Toledo Bar Assn. v. DeMarco*, 2015-Ohio-4549, for its recommendation that Villarreal receive an actual suspension.

**{¶ 27}** In that case, DeMarco repeatedly represented to a court that he had never received a disc of discovery materials from an expert witness, even though the expert had given the disc to DeMarco and DeMarco had reviewed the documents on it. *DeMarco* at ¶ 3, 6. After the expert testified that he had given the disc to DeMarco, DeMarco threatened that he "would like to go outside" with the expert. *Id*. at ¶ 6. DeMarco admitted to his misconduct only after the expert played the judge a voicemail in which DeMarco essentially admitted that he had lied to the court. *Id.* at ¶ 4, 6, 10. In addition to doubling down on his lies, DeMarco failed to show remorse or take responsibility for his actions until after his misrepresentations were discovered. We concluded that DeMarco violated

8

Prof.Cond.R. 3.3(a)(1), 3.3(a)(3), and 8.4(c) and imposed a one-year suspension with six months conditionally stayed. *Id.* at ¶ 7, 16.

{¶ 28} The parties, however, recommend in their briefs that Villarreal receive an 18-month suspension, fully stayed on conditions. In support of their recommendation, the parties focus primarily on *Disciplinary Counsel v. Jarvis*, 2022-Ohio-3936, and *Columbus Bar Assn. v. Davis*, 2022-Ohio-1286.

{¶ 29} In *Jarvis*, we imposed an 18-month suspension conditionally stayed in its entirety on an attorney who engaged in multiple acts of dishonesty while representing a married couple in an estate-planning matter. *Jarvis* at ¶ 1, 3. Jarvis falsely notarized and backdated several documents, signed documents as a witness despite not witnessing the signatures, and attested that one of his clients appeared to be of sound mind while aware that the client was suffering from Alzheimer's disease. *Id.* at ¶ 7, 12, 14. Additionally, Jarvis never personally communicated with the client despite having attested that the client was of sound mind. *Id.* at ¶ 12. We noted that "Jarvis's multiple failures opened the door to allegations that [the married couple] had been unduly influenced or coerced to modify their estate plan, which led to another six years of estate litigation and more than ten years of malpractice litigation." *Id.* at ¶ 39. Although Jarvis engaged in a pattern of dishonesty over a period of approximately ten months, we determined that the mitigating factors in his case—no prior discipline, a full and free disclosure to the board, cooperation in the disciplinary proceedings, and the imposition of another sanction in the form of a separate malpractice action and damages award against him—were sufficient to rebut the presumption of an actual suspension. *Id*. at ¶ 31, 40.

{¶ 30} In *Davis*, we imposed a one-year suspension conditionally stayed in its entirety on an attorney who failed to competently and diligently represent two clients and who engaged in dishonest conduct. *Davis* at ¶ 2, 8, 9, 24. Davis, representing a client in a marriage dissolution, took nearly a year after being

retained to file for the dissolution and then caused it to be dismissed by not filing the required documents with the court. *Id.* at ¶ 5. Davis also represented to the client that he had filed paperwork with the court when he had not, and he forged signatures on affidavits, falsely notarized those documents, and then filed them with the court. *Id.* at ¶ 6-7, 9. In his representation of another client in a child-custody matter, Davis reached an agreement with the guardian ad litem and opposing counsel, did not inform his client of the details of the agreement, and failed to file an entry memorializing that agreement as he said he would. *Id.* at ¶ 12. The court dismissed the case because an entry was not filed. *Id.* In addition, Davis initially failed to cooperate in the disciplinary proceedings. *Id.* at ¶ 11. We determined that Davis violated Prof.Cond.R. 8.4(c) in addition to numerous other violations. After comparing his conduct to that of attorneys in similar cases, we suspended him from the practice of law for one year, conditionally stayed in its entirety. *Id.* at ¶ 9, 24.

**{¶ 31}** In this case, relator alleged in only one of the four counts—the one involving the mishandling of the Almasoodi matter—that Villarreal had engaged in dishonest conduct. The trial court that sanctioned Villarreal in the Almasoodi matter found that Villarreal knew that Harris's affidavit contained false and misleading statements yet submitted it to the court anyway. It also found that Villarreal's own affidavit contained false statements regarding the timeline of events, the reasons for the initial rejection of the mechanic's lien by the recorder's office, and her awareness of the court's prior judgment entry.

**{¶ 32}** Nonetheless, Villarreal's conduct is somewhat less egregious than the attorney's conduct in *DeMarco*. Unlike the attorney in that case, Villarreal did not engage in a series of misrepresentations and she did not threaten violence against anyone. Further, Villarreal took full responsibility for her actions, made full and free disclosure to the board, and showed genuine remorse for her misconduct. Also, Villarreal paid $48,000 in sanctions levied against her for her

dishonest conduct. Being subject to that penalty is a mitigating factor in determining her sanction. *See* Gov.Bar R. V(13)(C)(6).

**{¶ 33}** In addition, Villarreal has not been disciplined in more than 35 years of practice. We have recognized that an "unblemished record" supports a decision not to impose an actual suspension, *Disciplinary Counsel v. Roberts*, 2008-Ohio-505, ¶ 19; *see also Disciplinary Counsel v. Miller*, 2017-Ohio-2821, ¶ 11 (citing cases in which the court "tempered [the] sanction [of an actual suspension] in cases presenting an isolated incident of forgery or falsification in an otherwise unblemished career"); *Disciplinary Counsel v. Oviatt*, 2018-Ohio-5091, ¶ 35 (noting that a long, unblemished legal career is "a significant mitigating factor").

**{¶ 34}** In accordance with our precedent, we conclude that Villarreal's isolated conduct and mitigation overcome the presumption of an actual suspension. The parties recommend that Villarreal receive a conditionally stayed 18-month suspension, and we agree that an 18-month suspension fully stayed on the conditions recommended by the board is the appropriate sanction for Villarreal's misconduct. Villarreal presented significant mitigation. She showed remorse, and she made a full and free disclosure to the board and fully cooperated in the disciplinary proceedings. She also made a timely, good faith effort to make restitution, paid $48,000 in sanctions for her dishonesty, and has an otherwise unblemished record in 35 years of practice.

**{¶ 35}** After weighing Villarreal's misconduct, the aggravating and mitigating factors present in this case, and our precedent, we conclude that the appropriate sanction for Villarreal's misconduct is a fully stayed 18-month suspension from the practice of law. We also conclude that the conditions proposed by the board and uncontested by the parties in their respective briefs are appropriate here. Therefore, Villarreal must engage in no further misconduct, complete six hours of CLE focused on law-office management (in addition to the requirements of Gov.Bar R. X), and work with a monitoring attorney appointed by relator for a

period of one year, with monitoring focused on law-office management and client communications.

### III.  CONCLUSION

{¶ 36} Accordingly, Teresa Ann Villarreal is suspended from the practice of law in Ohio for 18 months, with the suspension stayed in its entirety on the conditions that she (1) engage in no further misconduct, (2) complete six hours of CLE focused on law-office management, in addition to the requirements of Gov.Bar R. X, and (3) serve a one-year term of monitored probation pursuant to Gov.Bar R. V(21) focused on law-office management and client communications. If Villarreal fails to comply with the conditions of the stay, the stay will be lifted and she will serve the full 18-month suspension.  Costs are taxed to Villarreal.

Judgment accordingly.

_____

Kent R. Markus and Holly N. Wolf, Bar Counsel; and David A. Goldstein Co., L.P.A., and David A. Goldstein, for relator.

UB Greensfelder, L.L.P., and Alvin E. Mathews Jr., for respondent.

_____