[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Celebrezze*, Slip Opinion No. 2026-Ohio-45.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-45

DISCIPLINARY COUNSEL *v.* CELEBREZZE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Celebrezze*, Slip Opinion No. 2026-Ohio-45.]**

*Judges—Misconduct—Violations of the Code of Judicial Conduct and the Rules of Professional Conduct—Two-year suspension with one year conditionally stayed.*

(No. 2025-1005—Submitted September 16, 2025—Decided January 13, 2026.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-024.

_____

KENNEDY, C.J., authored the opinion of the court, which FISCHER, DETERS, HAWKINS, and SHANAHAN, JJ., joined. DEWINE and BRUNNER, JJ., did not participate.

**KENNEDY, C.J.**

{¶ 1} Respondent, Leslie Ann Celebrezze, Attorney Registration No. 0071679, was admitted to the practice of law in Ohio in 1999 and served as a judge on the Cuyahoga County Court of Common Pleas, Domestic Relations Division, a multijudge court, until her resignation on December 22, 2025.

{¶ 2} At the outset, it is important to point out that "[t]he purpose of random assignment or reassignment of cases is not only to avoid judge-shopping and to distribute cases equitably among judges, *see* Sup.R. 36.011 commentary, but also to maintain public confidence in the judicial system by ensuring that cases are assigned impartially and not deliberately to a certain judge," *In re Disqualification of Celebrezze*, 2023-Ohio-4383, ¶ 99. For this reason, the Rules of Superintendence for the Courts of Ohio require the random assignment of judges in multijudge courts, *see* Sup.R. 36.011, which helps "promot[e] fairness and impartiality and . . . reduc[e] the dangers of favoritism and bias," *United States v. Phillips*, 59 F.Supp.2d 1178, 1180 (D.Utah 1999).

{¶ 3} Yet for almost a year, Celebrezze repeatedly violated the Superintendence Rules and local court rules by assigning herself to high-stakes divorce cases and abused her position as administrative judge to pressure her colleagues of the domestic-relations division to transfer cases directly to her. In addition, for almost two years, Celebrezze often appointed or recommended the appointment of her long-term friend and love interest, Mark Dottore, as receiver or mediator, and in one case, Celebrezze authorized or approved his receiving a substantial payout of receiver fees. She failed to notify the respective parties in those cases of her close personal relationship with Dottore.

{¶ 4} Based on this conduct, relator, disciplinary counsel, charged Celebrezze with violating Jud.Cond.R. 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary), 2.5 (requiring a judge to perform judicial and

administrative duties competently and diligently and to comply with guidelines set forth in the Superintendence Rules), 2.9(A) (generally prohibiting a judge from initiating, receiving, permitting, or considering ex parte communications), and 2.11(A) (requiring a judge to disqualify herself in any proceeding in which the judge's impartiality might reasonably be questioned), and Prof.Cond.R. 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

**{¶ 5}** A three-member panel of the Board of Professional Conduct found by clear and convincing evidence that Celebrezze had committed judicial and professional misconduct and recommended that she be suspended from the practice of law for two years, with one year stayed on the condition that she commit no further misconduct, and that she pay the costs of these disciplinary proceedings. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, and it also recommended that we suspend Celebrezze from judicial office, without pay, for the duration of her suspension. The parties have jointly waived objections.

**{¶ 6}** We adopt the board's findings of misconduct and its recommended sanction. We also order Celebrezze to pay the costs of these disciplinary proceedings. However, because Celebrezze has resigned from her judgeship, it is not necessary to suspend her from judicial office without pay.

## MISCONDUCT

*Celebrezze's Relationship with Dottore*

**{¶ 7}** Since her childhood, Celebrezze has known Dottore, who acted in numerous capacities in the political operations of her family—at one point serving as campaign manager for her father, former Ohio Supreme Court Justice James

Celebrezze. Dottore even aided Celebrezze in the election to her judgeship. This long-standing relationship has, in recent years, grown closer, with Celebrezze going as far as telling her colleagues that she was in love with him.

*The Jardine Case*

{¶ 8} Judge Tonya Jones of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, was assigned to a divorce case between Jason and Crystal Jardine, *Jardine v. Jardine*, Cuyahoga C.P. No. DR-20-383667. On July 14, 2021, Judge Jones appointed Dottore as receiver. (A receiver is "an indifferent person between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation, and receive its rents, issues, [and] profits, and apply or dispose of them at the direction of the court." [Cleaned up.] *In re All Cases Against Sager Corp.*, 2012-Ohio-1444, ¶ 30.) Judge Jones made the appointment after Celebrezze told her that Dottore would be an appropriate choice for receiver in the case.

{¶ 9} Over a year later, Judge Jones voluntarily recused herself from the case to preclude any appearance of impropriety or conflict of interest. According to former Sup.R. 36.019(A), 150 Ohio St.3d C, CIX,[1] and Cuyahoga C.P., Domestic Relations Div., Loc.R. 2(B)(2) ("Loc.R. 2(B)(2)"), after a judge's recusal in a domestic-relations case, the administrative judge must randomly reassign the case, so Judge Jones sent the case to Celebrezze, who was then serving as the domestic-relations division's administrative judge, for random reassignment. Once Celebrezze received the case, she asked Judge Jones—who had recused herself— to issue an order directly reassigning the case to her. Although Judge Jones had no

---

1. Former Sup.R. 36.019(A) provided: "Following the recusal of a judge in a multi-judge court or division, the administrative judge shall randomly assign the case among the remaining judges of the court or division who are able to hear the case." 150 Ohio St.3d at CIX. We recently amended this rule by, among other things, replacing the word "recusal" with the word "disqualification." 179 Ohio St.3d lv, lvi. In this opinion, we use the former version of Sup.R. 36.019(A) that was in effect when Celebrezze committed her misconduct.

authority to select her own successor, *see* Sup.R. 4.01(C); former Sup.R. 36.019(A), she complied and reassigned the case to Celebrezze.

{¶ 10} On August 29, 2022, after Celebrezze's improper assignment to the case, Dottore filed a "Supplemental Brief in Support of Motion to Amend Appointment Order." The next day, Celebrezze granted the motion to amend and expanded Dottore's authority as receiver. Jason Jardine moved for reconsideration of the expansion of the receivership, which Dottore opposed.

{¶ 11} Celebrezze approved payment of Dottore's and his legal counsel's fees for the periods between July 14, 2021, and August 25, 2022, and January 1 and 31, 2023. As of August 18, 2023, in the Jardine case alone, Celebrezze had authorized or approved $241,935 in receiver fees to Dottore and $171,859.31 in fees to Dottore's legal counsel.

{¶ 12} Jason Jardine had Celebrezze surveilled by a private investigator. Between March 14 and 31, 2023, the private investigator observed the following: (1) Celebrezze repeatedly visited Dottore's office; (2) Celebrezze repeatedly visited Dottore's home, at one time staying inside for almost two and a half hours; and (3) Celebrezze socialized in public with Dottore on numerous occasions, including once with Crystal Jardine's attorney and once when she and Dottore exchanged a kiss on the lips after spending almost two and a half hours inside a steakhouse. With the results of the private investigator's surveillance in hand, Jason Jardine filed an affidavit of disqualification in this court against Celebrezze, which resulted in Celebrezze's removal from the case, *see Celebrezze*, 2023-Ohio-4383, at ¶ 95-114.

*The Maron Case*

{¶ 13} *Maron v. Maron*, Cuyahoga C.P. No. DR-20-382494, also a divorce case, was randomly assigned to Judge Colleen Reali of the Cuyahoga County Court of Common Pleas, Domestic Relations Division. In January 2023, Celebrezze approached the magistrate assigned to the case by Judge Reali and told him that she

would be taking the case from him. The case had become contentious and involved numerous motions, and the magistrate had been ill and working a reduced schedule. Celebrezze then contacted Judge Reali twice and offered to take the case from her to reduce her caseload.

{¶ 14} Judge Reali subsequently recused herself from the case. Instead of randomly reassigning it as required under former Sup.R. 36.019(A) and Loc.R. 2(B)(2), Celebrezze directed the assignment commissioner to reassign the case to her, and she signed an entry falsely stating that the case had been randomly reassigned to her by electronic judge roll.

{¶ 15} After trial commenced in the case, the parties considered settlement. Celebrezze recommended mediation and suggested Dottore as mediator, despite her improper assignment to the case and her long-standing personal relationship with Dottore. The parties objected to his appointment, and Celebrezze did not appoint him.

{¶ 16} On August 18, 2023—the same day that she was disqualified from the Jardine case—Celebrezze recused herself from the Maron case.

*The Abedrabbo Case*

{¶ 17} Another divorce case, *Abedrabbo v. Abedrabbo*, Cuyahoga C.P. No. DR-21-384289, was reassigned to Judge Reali after it was initially assigned to another judge. In November 2022, a complaint for a writ of mandamus was filed in this court against Judge Reali, requesting that Judge Reali be compelled to enter rulings in the divorce case on four pending motions. The complaint was filed on behalf of Abdelrahman Abedrabbo, the defendant in the divorce case, by his lawyer, Robert Glickman, who Celebrezze also considered to be her lawyer and who, over the years, provided legal advice and counsel to Celebrezze. After this court granted an alternative writ in January 2023, *see Abedrabbo v. Reali*, 2023-Ohio-152, Celebrezze began pressuring Judge Reali to transfer the divorce case to her. Judge Reali refused Celebrezze's request and explained that if she did recuse herself from

the divorce case, it would be randomly reassigned. In response, Celebrezze hinted that the mandamus action would "go away" if the divorce case was transferred to her. Celebrezze also told her that because of the mandamus action, Judge Reali would look bad if she stayed on the divorce case. The next day, Celebrezze told Judge Reali yet again that she should transfer the divorce case to her. When Judge Reali pushed back and made it clear that transferring the divorce case to Celebrezze would be improper, Celebrezze said, "I still think you should give it to me anyway."

{¶ 18} On January 27, 2023, a public-records request was filed with the domestic-relations division by an associate attorney at Glickman's firm, requesting documents about some of Judge Reali's cases. Celebrezze directed court staff to provide the requester with the responsive records without input from Judge Reali. Celebrezze explained to her colleagues that she did not want Judge Reali to review or check the requested records for accuracy, because it could constitute "tampering."

{¶ 19} On February 2, during a monthly meeting among the judges of the domestic-relations division, Celebrezze told Judge Reali that she must continue the divorce case. When asked why, Celebrezze claimed that a motion to continue had been filed on the division's "administrative docket." But that was a lie; in reality, a motion to continue had not been filed and the division did not have an "administrative docket." When Judge Reali asked to see the purported motion to continue, Celebrezze replied that if Judge Reali did not continue the case, she would continue it herself.

{¶ 20} On February 6, Glickman filed an affidavit of disqualification in this court against Judge Reali. Glickman sent to Celebrezze's personal email address a copy of a supplemental affidavit to his affidavit of disqualification. The attachment to the email was titled "Supplemental Affidavit—Final Redline."

{¶ 21} On March 15, Judge Reali recused herself from the divorce case, and it was randomly reassigned to Judge Diane Palos of the Cuyahoga County Court of

Common Pleas, Domestic Relations Division. Celebrezze then approached Judge Palos's bailiff and explained that Judge Palos could transfer the case to her, but Judge Palos refused to transfer the case.

*The Rennell Case*

{¶ 22} Judge Jones was assigned to and subsequently recused herself from *Rennell v. Rennell*, Cuyahoga C.P. No. DR-19-37900, another divorce case. After Judge Jones informed Celebrezze—in her capacity as administrative judge—of the recusal and that the case had been set for trial, Celebrezze told Judge Jones that she could accommodate the trial dates. On May 18, 2022, Judge Jones transferred the case to Celebrezze, who then manually reassigned the case to her own docket in violation of former Sup.R. 36.019(A) and Loc.R. 2(B)(2), which required the case to be reassigned randomly.

{¶ 23} On July 12, one of the parties in the case filed a motion to appoint Dottore as receiver, and Celebrezze granted the motion the next day. On July 19, Celebrezze granted a motion to appoint an attorney for Dottore.

*Celebrezze's False Statements During the Disciplinary Proceedings*

{¶ 24} Jason Jardine filed a grievance against Celebrezze that was based in part on her relationship with Dottore. In response, Celebrezze made false statements about her relationship with Dottore. When first pressed during the disciplinary investigation, Celebrezze attempted to conceal the true character of the relationship—whether it be romantic or political—and explained that they were only family friends. For example, Celebrezze asserted through her attorney that she and Dottore were merely "close personal friends" and that she has known Dottore since she was a child; she also said that she kissed Dottore on the lips merely because they are both Italian.

{¶ 25} In her responses to Jason Jardine's affidavit of disqualification and to the disciplinary investigation, Celebrezze specifically denied having a romantic

relationship with Dottore, claiming instead that she had been "happily married" to her husband for 25 years.

{¶ 26} In reality, Celebrezze had consulted with counsel about divorcing her husband and discussed her marital problems with her colleagues. Celebrezze stipulated that as a result of her marital problems and long-standing relationship with Dottore, she had developed a deeper emotional attachment to Dottore. She even told Judge Reali and Judge Francine Goldberg, also of the Cuyahoga County Court of Common Pleas, Domestic Relations Division—in separate conversations—that she was in love with Dottore. The board, however, found that there never was a sexual relationship between Celebrezze and Dottore.

*The Disciplinary Proceedings*

{¶ 27} After filing a complaint and first amended complaint in 2024, relator filed a second amended complaint against Celebrezze on January 21, 2025, which included four counts involving 15 rule violations.

{¶ 28} Celebrezze stipulated that she had committed all 15 of the alleged rule violations. She and relator entered into 158 written stipulations and stipulated to the admission of 90 joint exhibits. At the hearing before the panel on March 31, 2025, Celebrezze asserted her right against self-incrimination under the Fifth Amendment to the United States Constitution and indicated that she would not answer questions beyond those establishing that she had agreed to the stipulations in the record.

{¶ 29} The board found by clear and convincing evidence that Celebrezze's conduct constituted (1) three violations of Jud.Cond.R. 1.2, (2) three violations of Jud.Cond.R. 2.5, (3) one violation of Jud.Cond.R. 2.9(A), (4) three violations of Jud.Cond.R. 2.11(A), (5) one violation of Prof.Cond.R. 8.1(a), (6) one violation of Prof.Cond.R. 8.4(c), and (7) three violations of Prof.Cond.R. 8.4(d).

{¶ 30} We adopt the board's findings of misconduct.

## SANCTION

{¶ 31} "When imposing sanctions for judicial misconduct, we consider all relevant factors, including the ethical duties that the judge violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases." *Ohio State Bar Assn. v. Winkler*, 2024-Ohio-3141, ¶ 21.

{¶ 32} Celebrezze and relator stipulated and the board found that three aggravating factors are present in this case: (1) Celebrezze engaged in a pattern of misconduct that involved multiple cases over a period of years, *see* Gov.Bar R. V(13)(B)(3); (2) she committed multiple offenses based on 15 rule violations, *see* Gov.Bar R. V(13)(B)(4); and (3) she submitted false statements during the disciplinary investigation when she misrepresented her relationship with and feelings for Dottore, *see* Gov.Bar R. V(13)(B)(6). However, the board also found a fourth aggravating factor—that Celebrezze acted with a dishonest or selfish motive. *See* Gov.Bar R. V(13)(B)(2). We agree with the board that these four aggravating factors are present.

{¶ 33} The parties also stipulated and the board found that three mitigating factors are present. First, Celebrezze has no prior disciplinary record. *See* Gov.Bar R. V(13)(C)(1). Second, she supplied evidence of her good character or reputation by providing seven letters from members of the community, with many professing her integrity and professional reputation. *See* Gov.Bar R. V(13)(C)(5). Third, she demonstrated a cooperative attitude toward the disciplinary proceedings by entering into 158 written stipulations, admitting that she committed all 15 of the alleged rule violations, and stipulating to the admission of 90 joint exhibits. *See* Gov.Bar R. V(13)(C)(4). We agree with the board that these three mitigating factors are present.

{¶ 34} Celebrezze submits that a public reprimand is the appropriate sanction for her misconduct, while relator argues for a suspension from the practice of law for one year with six months stayed. The board, however, recommends a

sanction of a two-year suspension, with one year stayed on the condition that Celebrezze commit no further misconduct. We agree with the board's recommended sanction.

*An Actual Suspension Is the Presumptive Sanction for Celebrezze's Misconduct*

{¶ 35} Judges are held to a higher standard than attorneys who are not holding a judicial office. This is because "misconduct committed by a judge vested with the public's trust causes incalculable harm to the public perception of the legal system." *Disciplinary Counsel v. Dann*, 2012-Ohio-5337, ¶ 22. Still, the "primary purpose of judicial discipline is to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of this institution." *Disciplinary Counsel v. O'Neill*, 2004-Ohio-4704, ¶ 33.

{¶ 36} Because Celebrezze's misconduct involved dishonesty, we begin with our decision in *Disciplinary Counsel v. Fowerbaugh*, in which we held that "[w]hen an attorney engages in a course of conduct that violates [an ethical rule prohibiting dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate period of time," 1995-Ohio-261, syllabus. "We have since treated our pronouncement in *Fowerbaugh* as a presumptive sanction," *Mahoning Cty. Bar Assn. v. Macala*, 2024-Ohio-3158, ¶ 21, but we have explained that the presumption may be "tempered" when the "attorney has engaged in an isolated incident of dishonest conduct," *id.* at ¶ 24, or when "'an abundance of mitigating evidence'" exists, *id.* at ¶ 25, quoting *Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶ 8.

*Celebrezze Has Not Engaged in an Isolated Incident of Dishonest Conduct or Presented an Abundance of Mitigating Evidence*

{¶ 37} Here, Celebrezze's misconduct was not isolated—the parties stipulated and the board found that she engaged in a pattern of misconduct over approximately two years, and the board further found that the false statements she

submitted during the disciplinary proceedings were made with a dishonest or selfish motive. Nor has she supplied "an abundance of mitigating evidence," *Markijohn* at ¶ 8, through a showing of three mitigating factors and only seven character letters.

{¶ 38} Cases involving "an abundance of mitigating evidence" include more than what is present here. For example, in *Columbus Bar Assn. v. Villarreal*, we tempered the presumptive sanction after a showing of "significant mitigation." 2024-Ohio-5165, ¶ 34. The attorney "showed remorse, and she made a full and free disclosure to the board and fully cooperated in the disciplinary proceedings. She also made a timely, good faith effort to make restitution, paid $48,000 in sanctions for her dishonesty, and ha[d] an otherwise unblemished record in 35 years of practice." *Id.* And in *Disciplinary Counsel v. Miller*, we found an "abundance of mitigating evidence," 2024-Ohio-4939, ¶ 25, by a showing of four factors: "a clean disciplinary record, full and free disclosure to the board, evidence of good character or reputation, and the existence of the qualifying disorder of alcoholism in recovery," *id.* at ¶ 16. While the attorney submitted only nine character letters, the writers of those letters specifically "attest[ed] to his upstanding behavior and the effect that his disorder had had on his judgment and actions." *Id.* at ¶ 24. Lastly, in *Disciplinary Counsel v. Moore*, we tempered the presumptive sanction after a showing of three mitigating factors: "a clean disciplinary record, [the attorney's] full and free disclosure to the board and cooperative attitude toward the proceeding, and evidence of his good character or reputation." 2024-Ohio-5198, ¶ 17; *see also id.* at ¶ 23. While this combination of mitigating factors is almost the same as Celebrezze's, we also considered the attorney's treatment for his diagnosed mental disorder and his military service as factors justifying the imposition of a fully stayed suspension. *See id.* at ¶ 22.

{¶ 39} The mitigating evidence Celebrezze provided here, however, is sparse: to show evidence of her good character or reputation, she provided seven

character letters. In other cases in which we have specifically noted a strong showing of good character or reputation, the attorney usually provided far more. *See, e.g.*, *Disciplinary Counsel v. Summers*, 2012-Ohio-1144, ¶ 34, 37 (noting that the record was "replete" with evidence of good character and reputation after attorney provided approximately 50 character letters); *Disciplinary Counsel v. Agopian*, 2006-Ohio-6510, ¶ 14 (attorney provided more than 40 character letters, which "counsel[ed] against imposing" the recommended sanction of a one-year stayed suspension and public reprimand issued instead). Further, we have given little weight to character letters when they fail to mention the specific misconduct the attorney committed. *See, e.g.*, *Disciplinary Counsel v. Goodman*, 2024-Ohio-852, ¶ 21 (no extraordinary weight given to attorney's ten character letters when none specifically mentioned "the crime of which she was convicted"). Although some of the character letters supporting Celebrezze mention a familiarity with the allegations in the second amended complaint, they fail to specifically mention Celebrezze's misconduct at issue in these disciplinary proceedings.

{¶ 40} This case is more akin to *Toledo Bar Assn. v. Hickman*, 2005-Ohio-6513. Like Celebrezze, the attorney in *Hickman* had no prior disciplinary offenses, cooperated in the disciplinary proceedings, and submitted seven character letters, *see id.* at ¶ 10-11. He also expressed remorse for and acknowledged the wrongfulness of his misconduct. *Id.* In *Hickman*, we imposed an actual suspension, *id.* at ¶ 14-15, because there were no "significant extenuating or unusual circumstances" to warrant the imposition of a sanction that did not include time out from the practice of law, *id.* at ¶ 13.

{¶ 41} In this case, as in *Hickman*, there is not an abundance of mitigating evidence weighing against the imposition of the presumptive sanction. And what mitigating factors exist do not meet the abundance threshold—the factors are not among those we have found to be "extenuating or unusual," *id.* at ¶ 13, and the number of character letters that Celebrezze provided is far below the quantity noted

above as providing significant weight. Therefore, in determining the appropriate sanction for Celebrezze's misconduct, we examine cases in which we imposed actual suspensions.

*A Six-Month Suspension Is Too Lenient for Celebrezze's Misconduct*

{¶ 42} At the lower end of the spectrum of analogous cases are those resulting in the imposition of six-month suspensions. In *Disciplinary Counsel v. Hale*, we imposed a six-month suspension on a judge who, without the prosecutor's involvement or consent, dismissed a speeding ticket that had been issued to his personal attorney. 2014-Ohio-5053, ¶ 2, 13, 40. We decided that a six-month suspension was appropriate because the judge's misconduct was limited in scope to a single instance in which he had a personal connection with someone involved in a case, justice was ultimately served in that case, no litigants suffered permanent harm, and the judge voluntarily resigned from the bench within one month of the relator's complaint being certified. *Id*. at ¶ 39.

{¶ 43} Additionally, in *Disciplinary Counsel v. Goulding*, we imposed a six-month stayed suspension on a judge who, despite the case being assigned to another judge, interfered in a case involving the incarcerated boyfriend of a family friend. 2020-Ohio-4588, ¶ 2, 30. The judge's interference included engaging in ex parte communications with the incarcerated boyfriend and "orchestrating" his release. *Id.* at ¶ 2. Again, the judge's misconduct was limited in scope to a single instance in which he had a personal connection with someone involved in a case, and only two aggravating factors—multiple rule violations and an attitude of denial—were present, *id*. at ¶ 21-22.

{¶ 44} In both *Hale* and *Goulding*, the judge's misconduct involved improper interference in a single case. By comparison, Celebrezze's conduct was demonstrably worse: her misconduct involved multiple cases over a period of years. A six-month suspension is therefore too lenient for Celebrezze's misconduct.

*An Indefinite Suspension Is Not Warranted for Celebrezze's Misconduct*

{¶ 45} At the upper end of the spectrum of analogous cases are those resulting in the imposition of indefinite suspensions, but those sanctions generally resulted from criminal convictions or more egregious, protracted misconduct by the judge being disciplined. In *Disciplinary Counsel v. Hunter*, we imposed an indefinite suspension on a judge for abusing her judicial office to benefit her brother by engaging in conduct that resulted in her conviction of a felony for having an unlawful interest in a public contract. 2023-Ohio-4168, ¶ 2, 6, 39. That case, however, involved a judge's felony conviction, for which we normally impose an indefinite suspension or permanent disbarment. *See id*. at ¶ 31, citing *Disciplinary Counsel v. Terry*, 2016-Ohio-563 (permanent disbarment), *Disciplinary Counsel v. McAuliffe*, 2009-Ohio-1151 (same), and *Disciplinary Counsel v. Gallagher*, 1998-Ohio-592 (same); *see also Disciplinary Counsel v. Hunter*, 2023-Ohio-4168 (indefinite suspension).

{¶ 46} We also indefinitely suspended a judge in *Disciplinary Counsel v. Carr*, but in that case, the indefinite suspension was imposed for "unprecedented" and drawn-out misconduct. 2022-Ohio-3633, ¶ 97. In *Carr*, the judge's misconduct "involved more than 100 stipulated incidents that occurred over a period of approximately two years and encompassed repeated acts of dishonesty; the blatant and systematic disregard of due process, the law, court orders, and local rules; the disrespectful treatment of court staff and litigants; and the abuse of capias warrants and the court's contempt power." *Id.* Because of "the sheer volume of [the judge's] misconduct, including her disregard for the rule of law and the harm that her misconduct caused to the litigants in her courtroom and the honor and dignity of the judiciary," *id.* at ¶ 96, we imposed an indefinite suspension from the practice of law, *id.* at ¶ 97-98.

{¶ 47} Celebrezze's misconduct is distinguishable from misconduct justifying the imposition of an indefinite suspension. As noted above, cases that

15

result in the imposition of an indefinite suspension generally involve either a felony conviction or more egregious, protracted misconduct. At this point, Celebrezze's misconduct has not resulted in any criminal conviction, and her misconduct— despite involving multiple cases over a period of years—is not as unprecedented as the misconduct that was at issue in *Carr*.

*A Two-Year Suspension with One Year Stayed Is the Appropriate Sanction for Celebrezze's Misconduct*

{¶ 48} In the middle of the spectrum of analogous cases are those resulting in the imposition of actual one-year suspensions. In *Disciplinary Counsel v. Gaul*, we suspended a judge for one year, with no portion of the suspension stayed, for misconduct involving, among other things, his attempt to use his position as a judge to overturn a defendant's federal convictions. 2023-Ohio-4751, ¶ 30, 118. The judge "committed 29 rule violations under eight counts," *id.* at ¶ 116, and although many of his actions differed from Celebrezze's, there are key similarities. Just as Celebrezze abused her position as administrative judge in seeking to reassign cases to herself, the judge in *Gaul* abused his position by offering to assist a criminal defendant "in any way" to overturn his federal convictions, *id.* at ¶ 32, 35, ordering the county treasury to pay for portions of the transcript of the defendant's state-court trial for use in his federal appeal, and sending a letter of support to the defendant and granting permission for that letter to be sent to the attorney general of Ohio, *id.* at ¶ 30-35.

{¶ 49} In *Ohio State Bar Assn. v. Jacob*, we imposed a two-year suspension with one year stayed on a judge for falsifying court records and soliciting prostitution. 2017-Ohio-2733, ¶ 4-9, 21. By falsifying court records, the judge bypassed court procedure by sua sponte reducing a domestic-violence charge to disorderly conduct so that the defendant would not be prevented from collateral consequences such as owning a firearm and falsely indicated that the prosecutor had authorized the reduction. *Id.* at ¶ 6. The judge received an actual suspension

for engaging in dishonest conduct. *See id*. at ¶ 8-9. Like when Celebrezze manually reassigned the Rennell case to herself in violation of the Superintendence Rules and local court rules and entered an order falsely stating that the Maron case had been randomly transferred to her, the judge in *Jacob* intentionally manipulated proper court procedure and falsified records, *id*. And although his misconduct involved criminal convictions, he presented more mitigating evidence than Celebrezze, including timely resigning from his judgeship, serving a criminal sentence for his misconduct, and seeking other interim rehabilitation with the Ohio Lawyers Assistance Program and a personal psychiatrist. *See id.* at ¶ 4-7, 13.

{¶ 50} In *Disciplinary Counsel v. Medley*, we imposed an actual suspension of one year—an 18-month suspension with six months stayed—on a judge for misconduct similar to that of Celebrezze. 2004-Ohio-6402, ¶ 43. The judge engaged in dishonest conduct and failed to follow proper court procedure by "decid[ing] the merits of legal issues in both civil and criminal actions without first hearing from parties on both sides of those issues." *Id*. at ¶ 42. Indeed, we noted that "[a] judge may not blatantly disregard procedural rules simply to accomplish what he or she may unilaterally consider to be a speedier or more efficient administration of justice." *Id*. Comparatively, Celebrezze demonstrated a similar disregard for procedural rules by directing the transfer of the Maron case to her rather than having the case randomly reassigned.

{¶ 51} Yet Celebrezze's misconduct was worse than the misconduct at issue in *Medley*: she not only engaged in deception and manipulated court proceedings, but she also acted under a conflict of interest arising from her relationship with Dottore. By taking control of the Jardine case in which Dottore was the court-appointed receiver, Celebrezze was able to improperly act in Dottore's interest by approving large payouts of fees for him and his legal counsel. And whether the fees were improper is irrelevant here—Celebrezze used her authority as the administrative judge to take control of the Jardine case in which Dottore was

already acting as receiver and to take control of and appoint Dottore as receiver in the Rennell case and recommended Dottore for the role of mediator in the Maron case, but she failed to disclose her conflict of interest to any of the respective parties.

**{¶ 52}** We have deemed misconduct involving judicial conflicts of interest sanctionable. *See, e.g.*, *Disciplinary Counsel v. Kegley*, 2025-Ohio-910, ¶ 2, 24-25, 43 (sanction imposed on judge who used his status as a judge to secure release of his son from law-enforcement custody after his son was charged with domestic violence); *Disciplinary Counsel v. Elum*, 2012-Ohio-4700, ¶ 18, 21, 27 (sanction imposed on judge who improperly injected himself into an administrative investigation of a police officer's conduct); *Disciplinary Counsel v. Hoague*, 2000-Ohio-340, ¶ 1-3, 15 (sanction imposed on judge who, after witnessing reckless driving of a car, attempted to use his power as a judge to intimidate the car's owner to appear in his court so he could personally reprimand her, and when the owner and the car's driver came to court, threatened them with criminal prosecution); *Disciplinary Counsel v. O'Diam*, 2022-Ohio-1370, ¶ 7-20, 63 (sanction imposed on judge who, after being criticized by a beneficiary of an estate for permitting the judge's daughter to practice law in his probate court, questioned the beneficiary in court for almost an hour and allowed his daughter to question the beneficiary without restriction for over 15 minutes and assisted her in doing so); *Disciplinary Counsel v. Lemons*, 2022-Ohio-3625, ¶ 4-8, 11, 14, 25 (sanction imposed on judge who investigated a father's home because he was concerned for the welfare of children in the home and took action in their juvenile-court case without disclosing his personal investigation into the matter).

**{¶ 53}** But Celebrezze's actions were not simply those involving a judicial conflict of interest; she also abused rules requiring the random assignment or reassignment of judges—rules that carry special weight in our judicial system. The rules' purpose "is not only to avoid judge-shopping and to distribute cases equitably

among judges, *see* Sup.R. 36.011 commentary, but also to maintain public confidence in the judicial system by ensuring that cases are assigned impartially and not deliberately to a certain judge." *Celebrezze*, 2023-Ohio-4383, at ¶ 99. Indeed, "attempts to manipulate the random case assignment process are subject to universal condemnation" in part because of the "role that random assignment procedures play in promoting fairness and impartiality and in reducing the dangers of favoritism and bias." *Phillips*, 59 F.Supp.2d at 1180.

{¶ 54} Isolated conflicts of interest, as the cases summarized above demonstrate, may result in the imposition of a lesser sanction than what the board recommends here. But judicial conflicts of interest combined with the lack of respect for the importance of the Superintendence Rules and local court rules requiring random case reassignment—rules that carry special weight—justify the imposition of a sanction that involves something more than what relator promotes (one year with six months stayed) and what respondent seeks (a public reprimand).

{¶ 55} Therefore, a two-year suspension with one year stayed is the appropriate sanction to help mend the "incalculable harm to the public perception of the legal system," *Dann*, 2012-Ohio-5337, at ¶ 22, that Celebrezze's actions have caused. And while the damage has already been done, this suspension is our attempt to help repair that damage and "enhance public confidence in the integrity of" our judicial institution, *O'Neill*, 2004-Ohio-4704, at ¶ 33, through the exercise of "the full measure of our disciplinary authority," *Disciplinary Counsel v. Connor*, 2004-Ohio-6902, ¶ 18.

## CONCLUSION

{¶ 56} We have long recognized that "judges are held to the highest possible standard of ethical conduct." *Ohio State Bar Assn. v. McCafferty*, 2014-Ohio-3075, ¶ 16, citing *Mahoning Cty. Bar Assn. v. Franko*, 168 Ohio St. 17, 23 (1958). Celebrezze failed to live up to that high standard. Consequently, Leslie Ann Celebrezze is suspended from the practice of law in Ohio for two years, with

the final year of the suspension stayed on the condition that she commit no further misconduct.  If Celebrezze fails to comply with the condition of the stay, the stay will be lifted and she will serve the full two-year suspension.  Costs are taxed to Celebrezze.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Jay R. Wampler, Assistant Disciplinary Counsel, for relator.

Gallagher Sharp, L.L.P., Monica A. Sansalone, and Matthew T. Norman, for respondent.

_____